**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re: Joseph Walker          :     CHAPTER 13

           Debtor      :     BANKRUPTCY NO.19-12097

M&T Bank

           Movant      :

    v.

Joseph Walker            :

           Debtor

Tina Sloan

           Co-Debtor     :

William C. Miller, Esq.            :

           Trustee      :

**PROFFER OF EVIDECEN IN OPPOSITION TO M&T BANK MOTION TO DISMISS
THE BANKRUTPCY PROCEEDING OR, IN THE ALTERNATIVE, FOR RELIEF
FROM THE AUTOMAITC STAY**

Debtor Joseph Walker opposes the Motion filed by M&T Bank and submits that if a trial is held the evidence will show the following.  Under separate cover Debtor will be submitting Bates Stamped documents which may be submitted at trial in support of the facts.   Some of the documents Debtor may be putting into evidence do not yet exist and will be added as they come into existence.

1.  Joseph Walker is the only Debtor in the above captioned bankruptcy case.  He is the owner of the property known as 6715 Haverford Avenue, Philadelphia, PA 191*51* as a joint tenant with a right of survivorship with Tina Sloan.  Tina Sloan is not a debtor in the above captioned bankruptcy.  Debtor resides in the property with Tina Sloan and their minor child.

2.   Debtor and Tina Sloan executed a mortgage dated May 2, 2003 to secure a note in the original amount of $69,351 on their home at 67815 Haverford Avenue, Philadelphia, PA 19151.  The mortgage was recorded as Instrument number 50665810. The mortgage is the same document that M&T has attached to its motion.

3. The mortgage described in paragraph 2 above is currently in forbearance for a minimum of six months, subject to an additional six months of forbearance.  See CARES Act, Section 4022(b)(2), HUD Mortgagee Letter 2020-06.

4. The present forbearance period will continue to the middle of March 2021 and will be extended by Debtor and by Tina Sloan through the middle of October 2021.

5. Movant is presently precluded by HUD Mortgagee Letter 2020-27 as extended on December 21, 2020, from instituting or proceeding with any action in mortgage foreclosure at least until after February 28, 2021.  It has been precluded from doing so since March of 2020.

6. Absent Debtor's bankruptcy, Movant, if it had any right to foreclose under applicable non-bankruptcy law, is precluded from doing so and will be precluded from doing so for the foreseeable future, until after expiration the initial COVID-19 National Emergency Forbearance, or any extension thereof.  See

HUD Mortgagee Letter 2020-06, incorporated into HUD Handbook

4000.1, III.A.3. d. (E)(allowing enforcement of contractual

right only after "after expiration of COVID-19 National

Emergency forbearance.")

7. Because the mortgage upon which Movant relies is FHA

insured, Movant, if it is the holder of the mortgage is

guaranteed to receive 100% of such debt as it may be entitled to

receive under applicable non-bankruptcy law, including accrued

interest and reasonable costs and fees, to the extent permitted

by the applicable HUD regulations.  See 24 C.F.R. §§203.401-

203.403.

8.  Debtor has filed a complaint objecting to the Movant's

proof of claim.  The complaint is in pending litigation.

9. Because of this Movant has no allowed secured claim. See

11 U.S.C. §§502(a)and 506(a).

10. Debtor has at all times acted in good faith, both in

filing his bankruptcy and in proposing his plan.

11. Protecting any interest Movant may have in Debtor's

interest in his home claim is FHA insurance that guarantees M&T

bank payment of approximately $200,000.00 or more should

Debtor's plan fail, and should Movant be able to foreclosure on

the property.

12. Any interest movant may have in debtor's interest in his home is generously protected by the FHA insurance on the claim. *Pa. State Employees' Ret. Fund v. Roane*, 14 B.R. 542, 546 (E.D. Pa. 1981)("… FHA mortgage guarantee 'adequately protects' the mortgagees interest because the mortgagee may file an insurance claim for the payment of any losses suffered as a result of the nonpayment of the mortgage"); See 24 C.F.R. §§203.401 to 203.402.

13. Debtor anticipates the maximum allowed secured claim Movant will have upon resolution of Debtor's pending adversary action will be in the amount of approximately $36,000.00.  This is based on the value of Debtor's ½ interest in the property, less senior lines totaling almost $16,000.00 (including the proof of claim filed by the City of Philadelphia department of Water Revenue)and credit for the payments M&T admits it has received from Debtor since the filing of the bankruptcy.  Debtor anticipates this amount being further reduced by his claims for relief pursuant to F.R.B.P 3001(D)(ii) as well as the damages Debtor intends to seek against Movant's attorney pursuant to the FDCPA for pressing the instant motion, particularly the motion for relief, despite a moratorium which precludes Movant form doing so and despite Debtor being in a COVID-19 National Emergency Forbearance.

**4**

14. With one exception, not relevant to the instant motion, M&T Bank's motion to dismiss Debtor's Second Amended Complaint has been denied.

15.  Prior to the hearing on Confirmation, Debtor will be filing an amended proposed chapter 13 plan that will more closely conform to what he expects the outcome of the adversary to be and that will reflect income and payments he will have at that time.

16.  Debtor reasonably believed his initial plan was feasible and confirmable when he filed his bankruptcy.

17. Debtor's income, prior to the Pandemic and the COVID-19 National Emergency, when Debtor filed his initial proposed plan, supported the payments proposed in the plan.

18. Should the adversary action result in a determination that M&T Bank has an allowed secured claim in an amount that exceeds what Debtor can afford to pay, Debtor can, prior to confirmation, file an amended plan that does not provide for the allowed secured claim of M&T Bank at all.  *In re Bender*, 86 B.R. 809, 813 n.13(Bankr. E.D. Pa. 1988); See, 11 U.S.C. §§1325(a)(5)(setting forth required treatment of "each allowed secured claim provided for by the plan."), 1328(a)(discharging all debts "provided for by the plan"), 1322(c)(permitting different treatment amongst classes of claims).

19.   Because any interest M&T Bank may have in Debtor's home, including the payment of interest at the contract rate, is 100 per cent guaranteed by the Federal Housing Administration, M&T Bank faces no risk associated with the failure of Debtor's bankruptcy. *Pa. Sate Employee's Ret. Fund v Roane*, 14 B.R. 542, 546 (E.D. Pa. 1981).

20. If Debtor's plan should fail M&T Bank will receive substantially more, perhaps 5 or 6 times more, than it would receive if Debtor is able to modify M&T's rights under a confirmed plan and if Debtor's Bankruptcy is successful and M&T Bank's claim against Debtor is discharged.

21. The current prevailing interest rate for a 5-year treasury note – the analogous risk-free instrument – is .3%.

22. Prior to the hearing on confirmation Debtor will be filing amended schedules I and J to reflect changes in his income and expenses since the initial filing of the bankruptcy and the anticipated changes in his income over the life of the plan.

23. Debtor's income started to drop in the fall of 2019, after he filed the instant bankruptcy, as the weather cooled and his hours at work were cut back.

24.  The reduction in his hours and the reduction of his pay accelerated in January 2020 as fears resulting from the pandemic increased and business slowed.

25. Eventually, debtor's hours were reduced to 0.

26. Debtor received his last paycheck on March 19, 2020 for the period he worked through March 12, 2020 in the net amount of $287.20.

27. Immediately after being laid off, Debtor began trying to apply for Unemployment compensation, but he was unable to get through to the U.C. office to make his claim until June 28, 2020.

28. Debtor's unemployment claim has been approved.

29. However, the claim was only approved back to the date his application was accepted by Office of Unemployment Compensation.

30. Debtor has a back payment claim for 15 weeks of U.C. compensation back to the date he was laid off.

31.  For 14 of these weeks, Debtor is entitled to Federal Pandemic Unemployment Compensation (FPUC) in the amount of $600.00 a week in addition to the 15 weeks of Pennsylvania Unemployment Compensation Payments. (PAUC).

32. When this back payment claim is processed, Debtor should receive net payments, after federal tax withholdings, of

$7,560.00 in FPUC payments and $3,255.00 in PAUC payments, net

of federal withholding and the statutory benefit reduction.

33. Debtor's net weekly PAUC payment is $217.00, without

the FPUC.

34. In addition there is a 10-week period that ended

November 1, 2020 during which Debtor did not receive PAUC

payments because of glitches in the system that prevented his

claims from being registered.

35. Debtor has a back payment claim for these payments as

well, which amounts to and additional $2,170.00 net.

36. The total of the pending back payment claims is

$12,985.00 – net of all withheld taxes and statutory benefit

reductions.  Debtor will probably get the taxes withheld

refunded.

37. Debtor expects to receive this back payment award

within about three months.

38.  Debtor began receiving his PAUC on December 15, 2020.

39.  On that day he received PAUC payments for 8 weeks

totaling $1,734.00 net.

40. On 12/19/2020 Debtor received 4 FPUC payments –

totaling $2,160.00 net.

41. Debtor's gross weekly PAUC payment is currently

$248.00.

42. The gross weekly FPUC payment was $600.00 gross. Starting the week ending January 2, 2021 the weekly gross FPUC will be $300.

43.  Debtor is entitled to 11 weeks of FPUC in the weekly gross amount of $300.00.

44. Debtor is presently entitled to a total of 50 weeks of benefits beginning on the date of separation.  This includes PAUC, Federal Extended Unemployment Compensation(FEUC), from which there are no 2.4% benefit reduction deductions, and the PA Extended UC benefits (PEUC).  At the end of that time Debtor may be entitled to an additional 13 weeks of extended benefits if the unemployment remains high.

45. When debtor receives his back pay benefits, he intends to apply them on account of the allowed secured claim of M&T Bank, by way of adequate protection payments.

46. On 1/08/2021 Debtor received an additional 9 weekly U.C. payments totaling $1,953.00 net.

47.  In addition debtor has received a $600.00 stimulus payment the week of January 4, 2021.

48.  Debtor is also continuing to receive the contribution from Tina Sloan set forth in his original schedule J.

49.  Tina Sloan has cancer and is in need of round the clock assistance.

50. Debtor has applied to be Ms Sloan's home heath aide.

51. He expects to begin working in that position and being paid by the middle of March 2021.

52. His net income from that employment will likely exceed the net income Debtor had from his employment when he initially filed his bankruptcy.

53. If he receives his U.C. back payment in the time frame anticipated, Debtor expects that by the time his proposed plan is confirmed he will have paid between $15,000.00 and $20,000.00, or perhaps more, on account of any allowed secured claim M&T Bank is determined to have, including the adequate payments that have been made to date to M&T Bank.

54.  M&T Bank has received post-petition payments from Debtor totaling not less than $3,427.05 to date in adequate protection payments that are to be applied to reduce the allowed secured claim when that is determined.

55. Debtor was approved for a total of approximately $4,117.26 in Pandemic Mortgage assistance that was to be paid by the Pennsylvania Housing Finance Agency on or before November 30, 2020 on account of the post-petition payments provided by Debtor's initial proposed plan.

56. On or about November 25, 2020, M&T Bank refused to accept the payments and to apply them to Debtor's account, even refusing to place the payment in "suspense".

57.  At the time of this refusal Debtor's account with M&T Bank was in forbearance.

58.  As the result of this refusal, the PMAP grant was denied and debtor lost the ability to use these funds.

59. Under applicable non-bankruptcy law, M&T Bank is currently precluded from proceeding with the action in mortgage foreclosure it has filed against Debtor and will be precluded from doing so at least until October 2021, during which time, and thereafter, Debtor is entitled to consideration for loss mitigation options under the applicable HUD regulations and Mortgagee letters.

60. Debtor has at all times acted and continues to act in good faith. He is an honest Debtor seeking to obtain the discharge of over $1,400.00 in unsecured debts including an electric bill, which could, if left unresolved result in termination of service; if possible, to address his disputed mortgage debt and to take advantage of resolutions for that debt that are only available under the bankruptcy code.

61. Since March 2020 there has been a moratorium on the initiation or continuation of mortgage foreclosure actions by

**11**

mortgagees of FHA insured mortgages.   This moratorium continues

through February 28, 2021.



                               Respectfully submitted,



                               /s/ Irwin Trauss
                               Irwin Trauss, Esquire
                               Attorney for Debtor
                               PHILADELPHIA LEGAL ASSISTANCE
                               718 Arch Street, Suite 300N
                               Philadelphia, PA 19102
                               (215) 981-3811
                               (215)981 3870(fax)
                               itrauss@philalegal.org