**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re: Joseph Walker            :      CHAPTER 13

               Debtor       :      BANKRUPTCY NO.19-12097

M&T Bank
               Movant       :
      v.

Joseph Walker                   :
               Debtor
Tina Sloan
               Co-Debtor    :

William C. Miller, Esq.         :
               Trustee      :

**DEBTOR'S REPLY MEMORANDUM IN OPPOSITION TO M&T BANK'S MOTION TO DISMISS THE BANKRUTPCY PROCEEDING OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMAITC STAY**

**INTRODUCTION**

When, on May 21, 2021, it became obvious Mr. Walker was too grief stricken to testify at that hearing, the court asked the parties to submit briefs on the legal issue of whether the court could, consistent with the bankruptcy code, confirm a chapter 13 plan that expressly did not provide for M&T Bank's allowed secured claim. M&T bank argued at the hearing that such a plan was not confirmable and for that reason alone, among others that required the development of an evidentiary record, Debtor's bankruptcy had to be dismissed as having been filed in bad faith.

Debtor's previous brief addressed the single issue which the Court asked the parties to address – namely that a plan that expressly did not provide for an allowed secured claim was confirmable consistent with the bankruptcy code.  In the Supplemental Brief of M&T Bank in Support of M&T's Motion to Dismiss (M&T's Brief) M&T Bank did not present any argument or authority in support of the proposition that Debtor's Second Amended Plan was not confirmable because it expressly did not provide for any allowed secured claim M&T Bank may have. Instead, M&T Bank asserted other grounds for why Debtor's bankruptcy was allegedly filed in bad faith. In this brief Debtor addresses those arguments raised in M&T's Brief.

As is demonstrated below, M&T Bank has failed to establish that Mr. Walker has filed his bankruptcy in bad faith or that there is any other basis for dismissing his voluntary Chapter 13 bankruptcy pursuant to 11 U.S.C.1307(c).  M&T Bank's motion to dismiss Debtor's voluntary Chapter 13 bankruptcy must therefore be denied.[1]

**ARGUMENT**

---

1  To the extent M&T advances the alleged bad faith filing of the bankruptcy as a ground for relief from the automatic stay in the alternative, M&T's request for stay relief must also be denied, because it has failed to establish the bad faith which it claims would justify that relief.  See Part V, below.

## I. INTRODUCTION

As Debtor's circumstances have changed[2], so too have the
reasons M&T Bank has advanced for the dismissal of his voluntary
chapter 13 bankruptcy.  But one thing has remained constant, M&T
Bank's desire to have Debtor's bankruptcy dismissed, primarily
it appears, so M&T can avoid having to litigate the adversary
action which Mr. Walker has filed against it.  But M&T Bank's
motion to dismiss the adversary action has been denied, and M&T
Bank's desire to avoid litigating an adversary action is not
evidence of bad faith on the part of Mr. Walker and is not a
basis for dismissing Mr. Walker's bankruptcy.

M&T does not clearly articulate exactly why it is that
Debtor's bankruptcy was filed in bad faith and must for that
reason be dismissed pursuant to 11 U.S.C. §1307(c). Most of
M&T's efforts seem to be directed at convincing the court that
Debtor's Second Amended Plan is not confirmable because the plan
was not "proposed in good faith" as required by 11 U.S.C.
§1325(a)(3).  Though M&T does not explicitly make this
connection, it seems to be arguing that because Mr. Walker's

---

2  As Debtor testified at the May 21, 2021 hearing, Tina Sloan,
the mother of Mr. Walker's teenage daughter, the co-owner of his
home as a joint tenant with the right of survivorship and his
long time domestic partner died on March 26, 2021.

Second Amended Plan was not proposed in good faith, and is therefore not confirmable, his bankruptcy was filed in bad faith and for this reason must be dismissed pursuant to 11 U.S.C. §§1307(c).

M&T Bank summarizes its basis for relief in its Reply Brief. It first asserts that Debtor misstated the argument M&T was making at the May 21, 2021 hearing and in "Movant's objection to Debtor's Second Amended Chapter 13 Plan." M&T Reply Brief, p. 1.  M&T then goes on to explain:

> Debtor's Second Amended **Plan** was filed in bad faith as it provides no treatment for Movant's Secured claim and shows no reorganizational purpose while requiring Movant to litigate a lengthy, costly, duplicative and ultimately unnecessary adversary action.  As Movant detailed in its initial Brief, Debtor's Second Amended Plan is Debtor's bald attempt at using the bankruptcy forum to resolve a two-party dispute instead of the proper state court forum.

M&T Reply Brief, p. 1(emphasis added).

The problem with M&T's argument in both its initial brief and its Reply Brief is that the things about which M&T complains are all expressly contemplated and permitted by the bankruptcy code.[3]  In the Second Amended Plan and in the pending adversary

---

3  The other obstacle to M&T Bank obtaining the dismissal of Debtor's Bankruptcy petition is this Court's Order denying M&T's

action Debtor seeks, *inter alia*: the bifurcation of M&T Bank's claims into its secured and unsecured components; the *pro rata* payment of allowed unsecured claims (including the unsecured portion of M&T Bank's under-secured claim) in an amount that exceeds the minimum payment required by the Code; the avoidance of liens pursuant to 11 U.S.C. 506(d) as part of the claims determination process, irrespective of the plan provisions; and the discharge of the claims provided for by the plan, including the unsecured portion of M&T Bank's partially allowed secured claim.  These things are all expressly provided for, and are indeed required, by the code.

Contrary to the assertion made by M&T Bank, the adversary action about which M&T Bank so vigorously complains is not a dispute that can be, or could have been, resolved in state court.  In the adversary complaint, Debtor seeks relief that is only available to him in bankruptcy court.  In the adversary, Debtor seeks from the court, as part of the claims process

---

motion to dismiss the adversary action.  Because of the order denying the motion to dismiss, M&T bank is collaterally estopped from asserting any deficiency in that litigation as a basis for the dismissal of Debtor's bankruptcy. This court has at this point conclusively determined, for the purposes of this bankruptcy, Debtor's complaint to state a claim for relief. Debtor's entitlement to the relief requested will be born out or not by the factual development of the adversary case.

required by 11 U.S.C. §502(a)and(b), a determination of the amount, as of the petition date, of M&T Bank's allowed claim. But that is not all the relief sought by Debtor. Debtor seeks in the adversary action a determination, also part of the claims determination process, of the extent to which the allowed claim of M&T Bank is an "allowed secured claim" within the meaning of 11 U.S.C. §506(a) and the extent to which it is an "allowed unsecured claim" under that section of the code.

In his complaint Debtor further seeks an order, pursuant to 11 U.S.C. §506(d), avoiding the lien on his home represented by M&T Bank's mortgage, to the extent the mortgage secures a claim that is not an allowed secured claim.  The relief sought by Debtor pursuant to 11 U.S.C. 506(a) and (d) is relief that is only available to Debtor under the bankruptcy code[4].

These determinations, far from being "duplicative and ultimately unnecessary" are essential to Debtor obtaining the fresh start that is the primary purpose of Debtor's voluntary Chapter 13 bankruptcy, *In re Lilley*, 91 F.3d 491, 495 (3d Cir. 1996), whether M&T Bank's allowed secured claim is provided for

---

4     In his adversary complaint Debtor also seeks additional affirmative relief against M&T Bank for violating the provisions of Rule 3002.1, which is only available from the bankruptcy court.

**6**

in Debtor's chapter 13 plan or not.  *Id.*  As is explained in

Part III below and in footnote 5, these determinations are both

permitted and required by the code in evaluating the

confirmability of Debtor's chapter 13 plan.  They are necessary

to arrive at the extent to which M&T Bank can participate in the

bankruptcy as an unsecured creditor; the extent to which the

undersecured portion of M&T's claim (that is to say its allowed

unsecured claim) will be discharged by the successful completion

of Debtor's chapter 13 plan; the extent to which the lien

created by the mortgage M&T claims to hold on Debtor's home will

be avoided pursuant to 11 U.S.C. §506(d;)and the extent to which

the lien not provided for by the plan will survive the

bankruptcy.  See Debtor's Second Amended Chapter 13 plan

§§4(a),8, 9(b) and 9(g).[5]

---

5  The need to bifurcate a secured claim into its allowed
secured and allowed unsecured components was created by congress
in recognition of the ambiguous position of a creditor. Such as
M&T Bank in this case, who has a lien, but who would be unable
to obtain full satisfaction of the debt from the liquidation of
that lien.  11 U.S.C. § 506(a) answered the question of how to
deal in the bankruptcy with a secured creditor whose claim might
be allowed in some amount, but whose claim was "undersecured".
See e.g. H.R. Rep. 95—595 95th Cong. 1st sess. 1977 at 180.  As
was stated in the house report "the distinction [between secured
and unsecured creditors and secured and unsecured claims]
becomes important in the handling of creditors [like M&T Bank]
with a lien on property that is worth less than the amount of
their claim, that is those creditors that are undersecured."

**II. STANDARD FOR DETERMINIG EXISTENCE OF BAD FAITH FOR DISMISSAL FOR CAUSE UNDER SECTION 1307(c)OF THE CODE IF SUCH GROUNDS FOR DISMISSAL STILL EXIST AFTER THE 2005 AMENDEMENTS TO THE CODE.**

In its *In Re Lilley* opinion the Third Circuit promulgated a "totality of the circumstances" test for determining whether a Chapter 13 Bankruptcy has been filed in bad faith in connection

---

H.R. Rep. 95-595, supra, at 180.  There was concern that an undersecured creditor should not be excluded from participation in the general distribution of the assets of the estate.  At the same time Congress did not want the secured creditor to be paid twice — once from the realization of his interest in the security and a second time from the proceeds of the distribution.

Section 506 provides a solution to this problem by creating a mechanism which "separates an undersecured creditor's claim into two parts: He has a secured claim to the extent of the value of his collateral, and he has an unsecured claim for the balance of his claim."  S. Rep. No. 989, 95th Cong. 2d Sess. 68 (1978) [1]. *United States v Ron Pair, Inc.* 109 S. Ct. 1029.  As the Supreme Court recognized in its decision in *Ron Pair*, "section 506(a) *requires* a bifurcation of a 'partially secured' or 'undersecured' claim into separate and independent secured claim and unsecured claim components"). 109 S. Ct. at 1029 n.3 (quoting 3 Collier on Bankruptcy ¶506.04, p. 506-15 (15th ed. 1988)(emphasis added).  It is not something a court can choose not to do when addressing a secured claim. See *Nobelman v American Sav. Bank (In re Nobleman)*,508 U.S. 324,328 (1993) (Debtors were correct in looking to §506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.); *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 778 (1992)(Bifurcation under 506(a) is appropriate to separate a claim into secured and unsecured components for purpose of distribution even if lien on unsecured portion is not avoidable under §506(d) in a chapter 7 case.); See *McDonald v Master Fin., Inc.(In re McDonald)*, 205 F. 3d 606, 609-10 (3d Cir. 2000)(1322(b)(2) does not preclude bifurcation under 506(a), but in fact requires it).

with a motion to dismiss a case pursuant to 11 U.S.C. §1307(c).
*In re Lilley*, 91 F. 3d 491,496 (3rd Cir. 1996).  The Third
Circuit, following the lead of the Seventh Circuit, found bad
faith in filing a bankruptcy petition to be a basis for
dismissal of a Chapter 13 case even though bad faith was not
listed as grounds for dismissal or conversion in §1307(c).

   The addition in 2005 of §1325(a)(7) to the bankruptcy code
has put into question the rational for the holding in *Lilley*
since it appears to be the intention of congress that the lack
of good faith in filing a petition is an express basis for
denying confirmation and no longer, on its own, a basis for
dismissal of a chapter 13 case.  8 Collier on Bankruptcy
¶1325.08 (16th edition).  The Third Circuit has not addressed the
effect of the passage §1325(a)(7) on its decision in *Lilley*.

   Those courts that have construed §1307(c)to permit the
dismissal of a chapter 13 case because it was filed in bad
faith, have recognized that because dismissal is a harsher
remedy than denial of plan confirmation, the showing of bad
faith required for dismissal is substantially greater than the
showing of an absence of good faith necessary for denial of
confirmation.  8 Collier on Bankruptcy ¶1325.04(16th edition)
(noting that denial of confirmation normally offers the debtor

**9**

the opportunity to propose an alternative plan while dismissal totally eliminates the possibility of relief in the chapter 13 case); 8 Collier on Bankruptcy ¶1325.04[10].  Dismissal for bad faith is reserved only for "extraordinary circumstances." *In re Love*, 957 F.2d 1350, 1356 (7th Cir. 1992)(cited with approval by *In re Lilley*, 91 F. 3d 496);*In re Werden*, 200 Bankr. Lexis 1787,*5-7 (Bankr. D. N.H. 2000).  As with other grounds for dismissal, the moving party, in this case M&T Bank, has the burden of proof, including both the burden of going forward and the burden of persuasion on the issue of bad faith.  *In re Love*, 957 F.2d at 1356 (cited with approval by *In re Lilley*, 91 F. 3d 496); In re Werden, 200 Bankr. Lexis 1787, *5;.  As further explained in Part IV below, M&T Bank has not come forward with evidence sufficient to meet the high burden of establishing that Mr. Walker has filed his bankruptcy in bad faith.

*Lilley* articulated a "totality of the circumstances test" that must be assessed on a "case-by-case basis" for determining whether a debtor filed his chapter 13 bankruptcy in bad faith. Quoting from the decision of the Seventh Circuit in *Love* the Third Circuit in *Lilley* stated:

> Factors relevant to the totality of the circumstances inquiry may include:
>
> > the nature of the debt …; the timing of the

> petition; how the debt arose; the debtor's
> motive in filing the petition; how the debtor's
> actions affected the creditors; the debtor's
> treatment of creditors both before and after the
> petition was filed; and whether the debtor has
> been forthcoming with the bankruptcy court and
> the creditors.

*In re Love*, 957 F.2d 1357.

*Lilley*, 91 F.3d 496.[6]  M&T in the instant case has failed to meet

its burden of demonstrating that the totality of circumstances

in the instant case requires the dismissal of debtor's voluntary

Chapter 13 case as having been filed in bad faith.

**III.  DEBTOR'S PLAN, CONSISTENT WITH THE BANKRUTPCY CODE, PROVIDES FOR DEBTOR TO DISCHARGE $106,284.98 IN UNSECURED DEBT – AS MUCH AS $105,460.81.00 OF WHICH MAY BEOWED TO M&T Bank, IF HIS ADVERSARY IS SUCESSFUL**

---

6  In adopting the totality of the circumstances test articulated in *Love* the Third Circuit in *Lilley* rejected the question of whether the debt would be non-dischargeable in a Chapter 7 proceeding as a factor that would be relevant to the bad faith analysis. *Lilley*, 91 F.3d 496, n. 2. Also, the court in *Lilley* held that the debtor's history of tax fraud did not constitute cause for dismissal of his case under section 1307(c) when the bankruptcy code expressly permitted him to discharge the tax liabilities with respect to which the debtor made a fraudulent return or willfully attempted to evade or defeat.  The court reasoned it to be "wholly implausible that Congress would hold … the type of conduct in which Mr. Lilley engaged … [to be] so egregious as to warrant dismissal of his petition, but benign enough that the debt incurred as a result of such conduct would be dischargeable if no effort to dismiss his petition were made." *Id. at* 495.

M&T's primary, and perhaps only[7], evidence that "Debtor's bankruptcy is in bad faith and therefore must be dismissed" is Debtor's Second Amended Chapter 13 Plan filed on May 19, 2021, document 96.  M&T Brief, p. 1.  M&T claims the plan:

> Outlines Debtor's blatant attempt to use his bankruptcy filing solely for the vexatious purpose of unnecessarily litigating Movant's state foreclosure action in bankruptcy court.  Debtor's Second Amended Plan shows no true reorganization purpose for his bankruptcy and thus no reason for Debtor to remain in a Chapter 13 bankruptcy.

M&T Brief, p. 1.

In its brief, M&T goes on to complain more specifically that because Debtor's Second amended plan expressly does not provide for its allowed secured claim, Debtor's success in the adversary action:

"will result in the secured portion of the lien

---

7  M&T refers in footnote 1 of its brief to the Amended Schedules I and J which were filed by Debtor on April 20, 2021, as containing "materially false information as they include monthly income from Debtor's partner, who passed away on March 26, 2021." At the hearing on May 21, 2021, Debtor was called to testify about, *inter alia*, those amended schedules, but was overcome by grief and was unable to continue. The Court decided not to continue the hearing to a time when Debtor would be able to testify. It concluded that M&T's argument could be resolved as a matter of law without further development of the record.  The court asked the parties for briefs on whether Debtor's plan could unconfirmable because it expressly did not provide for M&T's allowed secured claim.  If the evidentiary record is further developed, it will show Debtor did not intentionally submit "materially false" schedules to the court.

riding through the bankruptcy and [M&T] receiving
literal pennies of the $58.33 intended for all
unsecured claims. …. Further, even if Debtor is
unsuccessful in the bifurcation action, there is no
harm to Debtor as ultimately the bifurcation action
serves no purpose within the bankruptcy.  If Debtor's
adversary action serves no benefit or harm to Debtor
in any scenario and will harm [M&T] in any scenario,
the plan must have been proposed in bad faith."

M&T Brief, p. 4.  Unintentionally, perhaps, M&T in this

expansion of its grounds for the relief it seeks has

demonstrated precisely why its Motion to Dismiss Debtor's

bankruptcy must be denied.

As M& T Bank correctly understands, Debtor's Second Amended

Chapter 13 plan provides in §§4(a),8, 9(b) and 9(g)for the lien

securing M&T Bank's allowed **secured** claim to pass through the

bankruptcy intact, to the extent it is not avoided in the

adversary action pursuant to 11 U.S.C. §506(d).  In addition,

Debtor's Second Amended Chapter 13 Plan provides for M& T Bank

to receive on the **unsecured** component of its allowed claim a *pro*

*rata* distribution along with the other holders of filed and

allowed **unsecured** claims.

If Debtor is successful in his adversary action, the total

allowed claim of M&T Bank will be reduced from the filed claim

in the amount of $198,179.83 to approximately $137,793.80 a

reduction of approximately $60.377.05 – without consideration of

**13**

Debtor's affirmative claims.  More importantly, even if Debtor
is unsuccessful in reducing the amount of the total allowed
claim, the amount of M&T Bank's allowed secured claim will be
reduced from $198,179.83 to approximately $92,710.02.  This is a
reduction of approximately $105,460.81.  Most importantly, if
Debtor prevails in the adversary, any lien M&T bank has on
Debtor's home represented by the mortgage, will be void,
pursuant to 11 U.S.C. §506(d) to the extent it exceeds the
amount of M&T Bank's allowed secured claim.  See footnote 5
above.

Thus M&T Bank's allowed secured claim, and the lien
securing it, to the extent the lien is not avoided pursuant to
§506(d), that will pass through the bankruptcy unaffected by the
plan and not subject to the discharge of 11 U.S.C. §1328(a) will
be in the amount of approximately $93,000.00 not approximately
$198,000.00 as M&T Bank contends.  Outside the bankruptcy, M&T
may[8] be able to take steps to foreclose on the lien that remains
after the adversary is resolved, but debtor will be able to
satisfy this lien by payment of $93,000.00 and not $198,000.00.

---

8  At present that is not the case because there is a moratorium
on M&T Bank's ability to take any steps to foreclose its
judgment that lasts through the end of August, 2021, and Debtor
is in a forbearance that also prevents any steps to foreclose.

**14**

There is no doubt that M&T Bank is unhappy with this result
and would like to do everything it can to avoid litigating the
adversary action which will bring this result about, but this is
what the bankruptcy code provides, and Debtor does not
demonstrate bad faith by filing a plan, and an adversary action,
that seeks to obtain precisely the results that the code
contemplates. *In re Lilley*, 91 F.3d 495; In re *Gathright*, 676
B.R. at 389-390.

M&T Bank complains that if Debtor is successful in his
adversary action, it will receive only pennies on the dollar on
its allowed unsecured claim, but this is also something that is
contemplated by the bankruptcy code and not any evidence of bad
faith on the part of Debtor. *In re Hines*, 723 F. 2d 333,334 (3rd
Cir. 1983). The measure of what Debtor must pay to the holders
of unsecured claims through his plan is provided by 11 U.S.C.
§1325(a)(4). Debtor has no non-exempt assets. Thus, in a
liquidation M&T Bank, along with Debtor's other unsecured
creditors, would receive nothing. The Debtor's plan proposes to
pay them more than that. The other measure of what Debtor must
pay is the net available income test set forth in §1325(b)(1),
which comes into play only when the plan is objected to by the

15

trustee or the holder of an allowed unsecured claim[9]. M&T Bank
has acknowledged that there is no evidence that Debtor's income
is greater than what he has represented it to be, or that his
expenses are less than what he has represented them to be.  To
the contrary, M&T asserts in its brief:

> "Debtor has failed to offer any evidence that any
> other plan that would provide for a higher monthly
> plan payment would even be feasible."

M&T Brief p. 5, n. 1.  Thus, Debtor meets this requirement for
confirmation as well.  *In re Gathright*, 67 B.R. at 387-388 (the
code requires no minimum payment to unsecured creditors in a
chapter 13 bankruptcy, over and above that required by
§§1325(a)(4) and 1325(b)(1)(B) and courts are not at liberty to
manufacture additional requirements.)

In 1983, before the 1984 amendments that resulted in the
addition of the net available income test, presently found in 11
U.S.C. §1325(b)(1), the Third Circuit recognized in *In re Hines*
that there was no minimum payment requirement for payments to
unsecured creditors in a Chapter 13 plan.  In that case the
Pennsylvania Department of Public welfare objected to the
confirmation of Debtor's Chapter 13 plan as having not been

---

9  In its capacity as the holder of an allowed **secured** claim,
M&T Bank has no standing to raise any failure of the plan to
meet the requirements of §1325(b)(1).

proposed in good faith because it provided for only "nominal

payments to unsecured creditors." In response to this argument

the Third Circuit held:

> The Commonwealth concedes that every court of appeals
> which has considered the question has ruled that
> Chapter 13 plans providing for nominal repayments to
> unsecured creditors do not, for that reason, violate
> the good faith standard of 11 U.S.C. §1325(a)(3)
> (1982).  We conclude that those decisions are entirely
> consistent with the statute.

*In re Hines*, 723 F. 2d 333,334 (3rd Cir. 1983)(citations

omitted.)  The Third Circuit's decision in *Hines,* is further

compelled by the adoption of §1325(b) in 1984, which sets forth

the criteria by which the amount of a debtor's minimum plan

payment must be measured.  *In re Gathright,* 676 B.R. at 389.

In *Gathright* Bankruptcy Judge Scholl held that a Chapter 13

Plan by which the Debtor seeks principally to discharge

obligations which are non-dischargeable in a Chapter 7 case was

proposed in good faith.  Judge Scholl reasoned that a

determination of bad faith in filing a bankruptcy or proposing a

plan cannot be influenced by the presence of a plan provision

that enables the debtor to take advantages of remedies for which

the code expressly provides.  *Gathright*, 676 B.R. at 389-390(the

1984 Amendments to the Code "restrict the element of 'good

faith' to the traditional concept of 'serious debtor misconduct

**17**

or abuse'" and do not include conduct expressly covered by specific provisions of the code.)  Judge Scholl's approach was endorsed by the Third Circuit in footnote 2 of *Lilley*, in which the Third Circuit stated:

> In light of *In re Gathright*, 67 Bankr 384,390(Bankr.
> E.D. Pa. 1986) we expressly reject one of the factors
> identified by the Seventh Circuit *in In re Love*: the
> question of whether the debt would be non-
> dischargeable in a Chapter 7 proceeding.

*Lilley*, 91 F.3d at 496, n. 2.

As is discussed at greater length below, absent from this case is any of the hallmarks of bad faith that were identified in *In re Meyer*, the only Chapter 13 case relied on by M&T in support of its motion to dismiss, or in the considerations articulated in *Lilley*.

## IV. THE CASES CITED BY M&T BANK PROVIDE NO SUPPORT FOR THE DIMSISSAL OF DEBTOR'S PETITION

In support of its motion to dismiss M&T Bank relies, with one exception, upon chapter 11 cases which were dismissed pursuant to §1112(b) of the code.  As the Seventh Circuit recognized in *In re Love*, while 1121(b) and 1307(c) are similar, the considerations that may be applicable in a Chapter 11 have no place in a chapter 13 case. *In re Love*, 957 F.2d 1357.

*In re Little Creek Dev. Co.* 779 F. 2d 1068, (5th Cir. 1986) provides M&T Bank with no support for a finding of bad faith I

the instant case. *Little Creek* was a chapter 11 case involving
a single asset business debtor attempting to prevent the
foreclosure by a secured creditor of its sole asset.  The asset
had a value that was less than the amount claimed by the secured
creditor.  Prior to filing its bankruptcy Little Creek obtained
an state court order forestalling the foreclosure but
conditioned on the payment of a $1,250,000.00 bond for the
continuation of the stay on the foreclosure.  Little Creek filed
the Chapter 11 bankruptcy before the bond became due.

In response to creditor's motion for relief, based on the
alleged bad faith filing, Little Creek through its counsel
admitted it could not afford to pay the bond needed to prevent
the sale of the asset. In addition, in response to the motion
for relief Little Creek raised many of the defenses that it had
raised in the state court litigation. *Id* at 1070.

The bankruptcy court found the filing to be in bad faith
based on the statements of counsel admitting that the bankruptcy
was filed to prevent the sale and on the litigation tactic
employed by debtor of attempting to litigate in bankruptcy court
many of the same issues that were in play in state court.  The
Fifth Circuit reversed the order of the bankruptcy court
holding:

**19**

> Standing alone, the conclusions of the bankruptcy
> court in this case, based solely on the statements of
> the debtor's counsel and the litigation tactic of
> attempting to retry the state court action in the
> course of the hearing on the motion for relief from
> the stay, did not provide sufficient evidence to show
> lack of good faith. See e.g. In re Route 202 Corp. ,
> 37 B.R. 367, 373(Bankr. E.D. Pa. 1984).  When compared
> with the several general indicia of bad faith
> previously discussed, these facts do not rise to the
> level of egregiousness necessary to conclude the
> reorganization process is being perverted in this case
> ….

*In re Little Creek Dev. Co.*, 779 F. 2d at 1074.  In the instant

case, M&T Bank's grounds for claiming Mr, Walker has filed his

case in bad faith are essentially the same as those that were

rejected by the Fifth Circuit as being sufficient evidence of

bad faith, even in the unique and almost presumptively bad faith

circumstance of a single asset business bankruptcy with a single

secured creditor.  See *Little Creek*, 779 F. 2d at 1072-

1073(describing cases that epitomize "[t]he 'new debtor

syndrome' in which a one-asset entity has been created or

revitalized on the eve of foreclosure to isolate the insolvent

property and its creditors, [and which] exemplifies, although it

does not uniquely characterize, bad faith cases.")

As described in Parts I and III above, it is not even the

case that the issues raised in the adversary litigation in the

instant matter mirror issues raised in state court. But even if

they did, it would not justify the dismissal of Mr. Walker's
bankruptcy for bad faith.

I*n re Argus Group 1700, Inc.*, 206 B.R. 737(Bankr. E.D. Pa.
1996) is another single asset busines case that provides no
support for M&T's position.  The debtor in *Argus* in was a
company in sound financial position who admitted that it filed
the Chapter 11 Bankruptcy to avoid a trial in state court before
a state court judge before whom the debtor believed it could not
get a fair trial.  In addition, Argus wanted the bankruptcy
court to approve financing that was unrelated to any
reorganization.  *Argus*, 206 B.R. at 753-754.  Under these
circumstances the bankruptcy court found the debtor was simply
engaged in impermissible forum shopping and filed the bankruptcy
with no need or desire to obtain any relief provided under
Chapter 11 of the bankruptcy code.  *Id*.  As demonstrated in
Parts I and III above and in the discussion below.  This is not
the case for Mr. Walker.

*In re EFL Partners X,* BR 13-11495-MDC, 2013 WL 4508423,
2013 Bankr. Lexis 3446 (Bankr. E.D. Pa. 2013), is another single
asset Chapter 11 case of the type described by the Fifth Circuit
in *Little Creek*, which as the Seventh Circuit recognized in *Love*
have little applicability to Chapter 13 cases.  In *EFL* the

bankruptcy court held that eight factors applicable to business
entities filing Chapter 11 cases weighed in favor of a finding
of bad faith.  They included:

1. Under the provisions of the bankruptcy code applicable
to Chapter 11 cases, there was no possibility of the debtor
being able to produce a confirmable plan without the approval of
the secured creditor who had a mortgage and judgment on the
single asset of Debtor that exceeded its value.

2. An entity related to debtor had filed a previous
bankruptcy.

3. The bankruptcy filing permitted the debtor to delay or
evade state court orders.

4. There was only one unsecured creditor, other than the
secured creditor seeking to have the bankruptcy dismissed, that
was not an insider, two of debtor's four unsecured creditors
were insiders.

5. There were few debts to non-moving creditors who were
not insiders - and no other secured creditor.

6. There was no pressure from the non-moving creditors,
including the single non-moving creditor, who had a miniscule
debt in the context of the business bankruptcy involving over
$4.5 million in total debt.

7. The reorganization essentially involved a two-party dispute, that did not involve any particular issues of bankruptcy law or relief available under the bankruptcy code;

8. The Debtor filed solely to obtain the protection of the automatic stay.

*EFL Partners,* 2013 Bankr. Lexis 3446 at 10-16.

None of these factors have any applicability to Mr. Walker's individual Chapter 13 case.  In contrast to a Chapter 11 case, Mr. Wlaker does not require the approval of M&T to have a confirmable plan and as discussed as discussed in Mr. Walker's initial brief, Debtor's Second Amended Plan is confirmable.  In the context of the typical Chapter 13 bankruptcy for a low-income debtor whose income is close to the federally recognized poverty line, Mr. Walker did not have few creditors. He had the typical debts a debtor unable to obtain credit has – mortgage debt, utility debt, and the occasional debt to a predatory lender.  Mr. Walker has four secured creditors, including M&T Bank who has the mortgage on his home, and two municipal utilities – the Water Department and PGW and a judgment owed to the City in connection with his unpaid water bill.  His three unsecured creditors include PECO, who did not file a proof of claim and who is his electric utility and to unpaid consumer

debts. Unpaid utility bills result in termination, which the
bankruptcy enabled Mr. Walker to avoid.  For the reasons set
forth in Parts I and III above, Mr. Walker's bankruptcy does not
involve a two-party dispute that could be resolved in state
court, but Debtor's utilization of Chapter 13 of the Bankruptcy
Code to obtain the relief the Chapter 13 was designed to
provide, including the discharge of as much as $106,244.98 in
unsecured debt.

Finally, M&T cites *In re Myers,* 491 F. 3d 120 (3rd Cir.
2007), the only Chapter 13 case relied on by M&T in support of
its argument that Debtor's Chapter 13 case was filed in bad
faith, which does not support a finding that Mr. Walker's case
was filed in bad faith.  In *Myers* the Third Circuit held that
the bankruptcy court did not abuse its discretion in finding
Mrs. Myers had filed her Chapter 13 bankruptcy in bad faith.
The bankruptcy noted five factors in support of its finding of
bad faith:

> (1) that Mrs. Myers filed the petition after the CP
> Court announced its intention to rule, but just before
> it did so; (2) that the filing was a tactic to prevent
> adverse rulings; (3) that SMS's state claim against
> Mrs. Myers was for fraudulent conveyance and
> represented the vast majority of her debt; (4) that
> Mrs. Myers allowed her husband to withdraw $6,000 from
> ACI's account, in violation of the CP Court's order,
> and used a portion of the funds to pay her bankruptcy
> counsel; and (5) that Mrs. Myers did not meet the

**24**

requirements for filing a Chapter 13 petition.
*In re Myers*, 491 F.3d at 125. The circuit court found that the
evidence supported the bankruptcy court's findings and that
taken together it could not say that the court abused its
discretion in dismissing the case.  None of the factors that
were present in the *Myers* case, and when taken together
presented a pattern of egregious conduct by the Mrs. Meyers, are
present in present in the instant case.

Debtor did not file his bankruptcy after a state trial,
after the state trial court announced his intention to rule but
before the court could deliver its ruling. For the reasons set
forth above, debtor's filing the bankruptcy was not a tactic to
prevent the state court ruling.  There is nothing to suggest
that Mr. Walker's debt to M&T bank was in any way fraudulent.
There is nothing to suggest that Debtor permitted any improper
removal of assts from a bank account to the detriment of M&T
bank and there is no suggestion that Mr. Walker does not meet
the requirements for being a Chapter 13 debtor under §109(e) of
the Bankruptcy Code.

None of the cases relied upon by M&T provide support for a
finding that the totality of circumstances in the instant case
support a finding that Mr. Walker has filed his bankruptcy in

bad faith.

V. M&T BANK HAS DEMONSTRATED NO GROUNDS FOR RELIEF

As an alternative to the dismissal of Mr. Walker's case, M&T Bank has asked the court to find that he has filed his bankruptcy in bad faith and for this reason to provide it with relief from the automatic stay.  Because the totality of circumstances does not demonstrate that Mr. Walker filed his bankruptcy in bad faith, M&T is not entitled to relief from the stay for cause. M&T's motion for relief should also be denied because the mortgage is in forbearance and is subject to a moratorium which precludes M&T from taking any steps to foreclose the mortgage.  See *Little Creek*, 779 F. 2d at 1072-1073 (denying motion for relief based on bad faith where record did not support finding of bad faith.)

## CONCLUSION

For the reasons set forth above and in Mr. Walker's initial brief, M&T Bank has failed to demonstrate that under the totality of circumstances Debtor has filed the instant bankruptcy in bad faith or that there is any cause to either dismiss his bankruptcy or to grant M&T Bank relief from the automatic stay.

Respectfully submitted,

/s/ Irwin Trauss
Irwin Trauss, Esquire
Attorney for Debtor
PHILADELPHIA LEGAL ASSISTANCE
718 Arch Street, Suite 300N
Philadelphia, PA 19102
(215) 981-3811
(215)981 3870(fax)
itrauss@philalegal.org