**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Joseph Walker, | : | |
| Debtor. | : | Bankruptcy No. 19-12097-MDC |

# MEMORANDUM

**I.     INTRODUCTION**

Pending before the Court is the motion of M&T Bank ("M&T") requesting that the Court dismiss this bankruptcy case, or in the alternative, grant M&T relief from the automatic stay (the "Motion to Dismiss").[1]  For the reasons set forth herein, the Court will deny the Motion to Dismiss.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

    **A.     The Debtor's Bankruptcy Filing and Schedules**

Joseph Walker (the "Debtor") filed the above-captioned bankruptcy case on April 1, 2019.  His original Schedule A/B represented that he owned a property located at 6715 Haverford Avenue in Philadelphia (the "Property") as joint tenant with right of survivorship.[2] He valued the Property at $108,500.00, and thus his one-half interest at $54,250.00.  The Debtor's Schedule D identified three claims secured by the Property: (i) a claim of M&T Bank (the "M&T Claim") in the amount of $157,989.30, which Debtor asserted was secured by collateral having a value of $53,250.00; (ii) a claim of the Philadelphia Department of Water

---

[1] Bankr. Docket No. 51.
[2] Bankr. Docket No. 12.

Revenue (the "WRD Claim") in the amount of $800.00, secured by collateral having a value of $54,250.00; and (iii) a claim of Philadelphia Gas Works (the "PGW Claim") in the amount of $200.00, secured by collateral having a value of $53,450.00.[3] The Debtor's Schedule E/F listed no priority unsecured claims and three nonpriority secured claims totaling approximately $1,400.00. Schedule H identified non-debtor Tina Sloan ("Ms. Sloan"), with whom the Debtor shared a daughter, as a co-debtor on the three secured claims listed in Schedule D. The Debtor's Schedules I and J reflected monthly income of $2,198.20 against expenses of $2,183.01, leaving net income of just $15.19 per month.

**B.    The Debtor's Original Plan and the Adversary Proceeding**

On May 2, 2019, the Debtor filed his original chapter 13 plan (the "Original Plan").[4] Relevant here, the Original Plan proposed to pay the Chapter 13 Trustee (the "Trustee") $5.00 per month for 60 months, for a total of $300.00. After payment of $27.27 to the Trustee for fees and $58.33 for distribution to allowed unsecured claims, the Debtor proposed to pay $215.40 to satisfy the PGW Claim. With respect to the M&T Claim, the Debtor proposed to pay $750.00 per month directly to "M&T Bank – or holder of mortgage on Debtor's home[,] identity of claim holder to be determined by adversary" to satisfy an allowed secured claim of $53,250.00, with such amount also proposed "to be determined by adversary litigation." The Original Plan did not treat the WRD Claim. M&T and the Trustee each filed objections to the Original Plan.[5]

---

[3] The slightly different amounts attributed to the collateral securing each of the three secured claims is a typographical error. The collateral securing each is identified as the same "2 Story, 3 Bedroom Brick Row Home," and the value the Debtor attributed to his interest in the Property in Schedule A/B is $54,250.00.

[4] Bankr. Docket No. 14.

[5] Bankr. Docket Nos. 24, 25.

On June 10, 2019, M&T filed a proof of claim against the Debtor's estate (the "M&T Proof of Claim"),[6] asserting a claim in the amount of $175,839.58 fully secured by the Property. On November 20, 2019, while the Original Plan was still pending for confirmation, the Debtor initiated an adversary proceeding (the "Adversary Proceeding") against M&T by filing a complaint (i) objecting to the M&T Proof of Claim, and (ii) seeking a determination of the extent and validity of M&T's lien on the Property and the extent to which M&T holds an allowed secured claim and an allowed unsecured claim.[7] Approximately one month later, on December 17, 2019, M&T amended the M&T Proof of Claim to assert a claim in the amount of $198,170.83, fully secured by the Property. The WRB and the City of Philadelphia (the "City") have each filed secured claims as well, in the amount $15,789.98 and $318.50 respectively, both asserted to be secured by the Property.

### C.     The Motion to Dismiss and the Second Amended Plan

After the Trustee moved to dismiss the Debtor's bankruptcy case, first based on the Debtor's alleged failure to file documents, and then on his alleged failure to file an adequately funded plan,[8] a hearing on which has been continued from time to time, on September 18, 2020, M&T filed its own Motion to Dismiss. M&T's Motion to Dismiss sought dismissal under §§105 and 1307 of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"), alleging the Debtor had engaged in unreasonable delay, the Original Plan was infeasible,

---

[6] Claim No. 3-1.

[7] Bankr. Docket No. 37; Adv. Pro. 19-00228 Docket No. 1. The Court finds it unnecessary to resolution of the pending Motion to Dismiss to recount the somewhat extensive procedural history of the Adversary Proceeding, other than to say that the operative pleading is the Second Amended Complaint, an Amended Scheduling Order was entered on January 19, 2022, at Adversary Pro. Docket No. 65, and the pretrial conference is currently scheduled for November 16, 2022.

[8] Bankr. Docket Nos. 18, 35.

and the Debtor filed his bankruptcy case in bad faith days before a state foreclosure trial. In the alternative, M&T sought relief from the automatic stay to proceed with foreclosing on the Property. The Debtor filed a response to the Motion to Dismiss (the "Response") on October 20, 2020,[9] asserting the Debtor's proposed Original Plan was feasible, M&T was precluded from foreclosing under the CARES Act and M&T's secured claim was adequately protected in any event, and the Debtor filed his bankruptcy case in good faith.

On January 8, 2021, the Parties filed additional evidence in support of and in opposition to the Motion to Dismiss,[10] and on January 22, 2021, separately advised the Court that an evidentiary hearing on the Motion to Dismiss was desired.[11] After a series of continuations, that evidentiary hearing (the "Hearing") was held on May 21, 2021. In the interim, however, on April 20, 2021, the Debtor filed a First Amended Plan and amended Schedules I and J,[12] followed by a Second Amended Plan on May 19, 2021, two days before the Hearing.[13] The Amended Schedules I and J reflected monthly income of $2,960.33 against monthly expenses of $2,674.41, for net monthly income of $285.92.[14]

Under the Second Amended Plan, the Debtor still proposes to pay the Trustee $5.00 per month for 60 months, with the same distribution of funds to the Trustee and allowed general unsecured claims that was proposed in the Original Plan. The Second Amended Plan does

---

[9] Bankr. Docket No. 58.

[10] Bankr. Docket Nos. 65, 66, 67.

[11] Bankr. Docket Nos. 68, 69.

[12] Bankr. Docket Nos. 89, 90, 91.

[13] Bankr. Docket No. 96.

[14] The Debtor has since filed further amended Schedules I and J, on February 9, 2022, reflecting monthly income of $1,585.00 against monthly expenses of $1,577.36, reflecting net monthly income of $7.64.

provide for PGW's secured claim but does not provide for the secured claims of M&T, the City, or the WRD.  With respect to the M&T claim, the Second Amended Plan states that the "[a]llowed unsecured portion of this claim is provided for by the plan," and that "[t]his loan is currently in forbearance, Debtor has no current obligation to make payments."[15]  The Plan goes on to provide as follows:

> Debtor has filed an adversary action to determine the extent and validity of the [sic] M&T Bank's claim Claim #3-1; as amended by #3-2, referenced in §4(a) above and the extent to which it is an allowed secured claim within the meaning of 11 U.S.C. §506(a) and an allowed unsecured claim within the meaning of 11 U.S.C. §506(a).  The adversary will also determine who is the rightful holder of the claim entitled to payment.  To the extent #3-1, as amended by Claim #3-2, is determined to be an allowed <u>secured</u> claim secured by a lien on Debtor's interest in 6715 Haverford Avenue, that claim is not provided for by Debtor's Chapter 13 plan, within the meaning of 11 U.S.C. §§1325(a)(5) and 1328(a).
>
> To the extent Claim #3-1 as amended by #3-2, or any portion thereof, is determined to be an allowed <u>unsecured</u> claim within the meaning of 1 U.S.C. §506(a) [sic] it is provided for by this plan within the meaning of 11 U.S.C. 1328(a) and shall be paid *pro rata* as a general unsecured claim along with the other general unsecured claims pursuant to Part 8 above.[16]

The Second Amended Plan also provides that "Debtor reserves the right to press any claims he may have resulting from incorrect information contained in any statement and any claims under any state or federal consumer protection statute of CFPB regulation unrelated to the violation of the automatic stay."[17]

At the Hearing, Debtor's counsel advised that Ms. Sloan had passed away, resulting in the Debtor owning the entire Property, rather than the one-half interest on which the Original

---

[15] Second Amended Plan, at §4(a).

[16] Second Amended Plan, at §9(b) (emphasis in original).

[17] *Id.*, at §9(j).  Thie provision is relevant with respect to M&T because in his Response the Debtor asserts that M&T is in violation of CFPB regulations and provisions of the Fair Debt Collections Practices Act.  See Response at ¶86.

Plan was based. Therefore, rather than cram down M&T's secured claim to the value of the Debtor's one-half interest in the Property, as proposed in the Original Plan, under the Second Amended Plan M&T's claim, to the extent secured, is not treated and would pass through the Debtor's bankruptcy case unaffected, with the unsecured portion entitled to *pro rata* treatment with other allowed general unsecured claims.

At the conclusion of the Hearing, the Court took the Motion to Dismiss under advisement and directed the Parties to submit post-Hearing briefs (the "Briefs"). Briefs by both Parties were then filed over the ensuing three months, the last of which was filed on August 13, 2021.[18] The Court has held a series of status conferences with the Parties since briefing was completed and issues this Memorandum after consideration of the Motion to Dismiss, the Response, the Briefs, the arguments of the Parties at the Hearing, and the reports of the Parties at the status conferences.

### III.    DISCUSSION

#### A.    The Parties' Arguments

M&T argues the Debtor's bankruptcy filing and the proposed Second Amended Plan are in bad faith where the Debtor has only filed the case to reduce M&T's secured claim without providing for it (or the substantial secured claims of the City and the WRD) in the proposed plan, and where the proposed plan provides almost no recovery to unsecured creditors or even fees to the Trustee. M&T asserts this plan structure is akin to a fee-only plan in a Chapter 11 bankruptcy, which courts have found deserve a high degree of scrutiny. M&T also argues this case is essentially a two-party dispute that should be litigated in the state foreclosure

---

[18] Bankr. Docket Nos. 101, 103, 106, 108, 111.

proceedings, where the Debtor can still dispute the amount of M&T's claim at the damages stage. M&T further asserts that because its lien will ride through the Debtor's bankruptcy without payment under the proposed Second Amended Plan, the effort to bifurcate it in the Adversary Proceeding is meaningless, as the state foreclosure action will still proceed regardless notwithstanding the outcome of the Adversary Proceeding.

The Debtor argues in response that there is no bad faith in a debtor filing a chapter 13 bankruptcy case to take advantage of the tools contemplated and provided for only by the Bankruptcy Code. The Debtor argues that he is making the minimum payments required under §1325(a)(4) of the Bankruptcy Code, asserting he has no non-exempt assets which would be available in a chapter 7 liquidation, and that the case serves a bankruptcy purpose by discharging the unsecured claims against the Debtor, including what is determined to be the unsecured claim of M&T after bifurcation. The Debtor argues that if he is successful in bifurcating the M&T claim, on which the confirmability of his proposed plan depends, the secured claim he will have to deal with outside of bankruptcy will be approximately $93,000, a reduction of over $100,000 from M&T's asserted secured claim.[19]

      **B.**    **The De Minimis Payments Proposed Under the Second Amended Plan and Failure to Treat M&T's Secured Claim Do Not Establish a Bad Faith Filing**

The Motion to Dismiss boils down to whether the Debtor can file a chapter 13 bankruptcy case in good faith primarily to bifurcate M&T's claim, while proposing a plan that has a minimal payout to allowed general unsecured claims, pays only one secured claim, and does not provide for treatment of M&T's claim (or the other substantial secured claims) at all.

---

[19] The Debtor also argued that M&T is unable to proceed with foreclosure in any event given the moratorium imposed by the CARES Act, but that moratorium expired on July 31, 2021.

The Debtor argues he has filed this case to employ a tool offered only under the Bankruptcy Code, *i.e.,* bifurcation of M&T's secured claim into secured and unsecured portions and is not precluded from then having the untreated secured claims pass through the bankruptcy case to be dealt with outside of bankruptcy.

The Court agrees with the Debtor that such a proposed plan does not, in and of itself, establish a bad faith bankruptcy filing warranting dismissal. First, it is not problematic that the Debtor proposes to not treat M&T's secured claim (or the secured claims of the WRD and the City) under the Second Amended Plan. Courts recognize that secured claims may be treated outside of the plan, citing §1325(a)(5)'s provision for confirmation of plans that afford proper treatment to secured claims "provided for by the plan." *See, e.g., In re Evans*, 77 B.R. 457 (E.D. Pa. 1987) (affirming bankruptcy court ruling that the debtor was not required to provide for IRS's secured tax claim in the plan, but could instead provide for it outside the plan, because §1325(a)(5) enables a debtor to make that choice) (*citing Matter of Foster*, 670 F.2d 478 (5th Cir. 1982)); *In re Jones*, 2021 Bankr. LEXIS 2664, at *7-*8 (Bankr. E.D.N.C. Sept. 29, 2021) (nothing in §1325(a)(5) requires treatment of a fully secured creditor in a chapter 13 plan). The possibility that a debtor will choose not to treat a secured claim under the plan is consistent with the well-established principle that secured claims pass through the bankruptcy case unaffected where the chapter 13 plan fails to provide for them. *See, e.g., Jones*, 2021 Bankr. LEXIS 2664, at *9-*10 (a chapter 13 debtor can choose not to deal with certain secured claims, which is why under §1327(c), unaddressed secured claims pass through a chapter 13 reorganization unaffected even if the property subject to the claim is addressed by the plan) (*quoting In re Reg'l Bldg. Sys., Inc.*, 254 F.3d 528 (4th Cir. 2001)); *Ruxton v. City of Philadelphia (In re Ruxton)*, 246 B.R. 508

(E.D. Pa. 2000) (citing cases holding that untreated secured claims pass through the chapter 13 case).

The flexibility afforded to debtors by §1325(a)(5) applies equally in the context of bifurcation, where the unsecured portion will be treated under the plan and the secured portion treated outside it. *See First Nationwide Mortg. Corp. v. Kinney (In re Kinney)*, 2000 U.S. Dist. LEXIS 22313 (D. Conn. Apr. 12, 2000) (affirming bankruptcy court's confirmation of plan where secured mortgage debt was bifurcated, with unsecured portion and arrearages to be paid under the plan, while payments on secured portion were to be paid outside the plan); *Homeowners Funding Co. v. Skinner*, 129 B.R. 60 (E.D.N.C. 1991) (where debtors bifurcated secured creditor's claim under their plan pursuant to §506(a) and provided for payment of the unsecured portion under the plan and the secured portion outside the plan, the court rejected the creditor's argument that the plan was not confirmable because it failed to treat the secured portion, pointing to the express terms of §1325(a)(5) limiting its application only to secured claims provided for by the plan).

Second, there are cases in and out of the Third Circuit acknowledging that a debtor does not act in bad faith by taking advantage of the unique rights granted debtors under the Bankruptcy Code, even where doing so was the primary motivation for the filing and general unsecured creditors will receive little under a confirmed plan. *See In re Lilley*, 91 F.3d 491, 495 (3d Cir. 1996) (remanding case to bankruptcy court to conduct further factual inquiry into whether the debtor filed the case in bad faith, but finding the debtor's pre-petition tax fraud was not cause for dismissal as a bad faith filing under §1307(c) in light of the fact that the Code permits the resulting debt to be discharged); *In re Manzo*, 577 B.R. 759, 771 (N.D. Ill. 2017)

(finding that the chapter 13 debtor's plan was not proposed in bad faith where it sought to strip a second-position lien, which could not have been done in chapter 7, and would pay a minimal recovery to unsecured claims while the debtor retained his exempt social security benefits, because the debtor "did nothing more or less than propose a plan that would, if confirmed, provide relief that the Bankruptcy Code is designed to offer. Like numerous courts under similar circumstances, this Court concludes that merely making such a proposal, without more, cannot support a finding of bad faith … [I]n the absence of any indication in the record that [the debtor] did anything other than seek relief Congress intended Chapter 13 debtors to be eligible to receive under the Bankruptcy Code, [the court] must remand to the bankruptcy court to determine whether there are any other facts, such as improper motives, manipulation, or misrepresentations on [the debtor's] part, that might support a finding of bad faith, or alternatively, whether [his] Plan should be confirmed.") (citing cases); *Meyer v. Lepe (In re Lepe)*, 470 B.R. 851, 862 (9th Cir. B.A.P. 2012) (debtor's proposed plan that would strip second-lien holder's lien while paying unsecured claims a small fractional recovery did not support a finding that the debtor lacked good faith, because "a debtor's lack of good faith cannot be found based solely on the fact that the debtor is doing what the Code allows."); *In re Okosisi*, 451 B.R. 90, 101 (Bankr. D. Nev. 2011) (where chapter 13 debtors were ineligible for a discharge based on chapter 7 discharge having been received within two years prior, they did not act in bad faith by proposing a plan that would avoid a second lien upon successful completion of the plan while providing only a small dividend to unsecured claims because the plan had a bankruptcy purpose in allowing the debtors to restructure a mortgage and pay priority tax claims); *but see Long Thanh Tang v. Leverage Leasing Co. (In re Long Thanh Tang)*, 2005 Bankr. LEXIS 3399, at *29 (B.A.P. 9th

Cir. Mar. 24, 2005) (affirming bankruptcy court's dismissal of debtor's case as having been filed in bad faith using totality of the circumstances test, finding that the primary motive was to discharge a debt previously stipulated to be nondischargeable in the debtor's prior chapter 7 while providing unsecured claims less than a 1% recovery, and where the debtor conceded that no party would benefit from his plan other than his attorney, the chapter 13 trustee, and the debtor by receiving the superdischarge).

      Here, the primary purpose of the Debtor's bankruptcy case is to employ §506(a) to bifurcate M&T's claims into secured and unsecured portions, with the unsecured portion receiving a pro rata distribution under the proposed Second Amended Plan and the secured portion "riding through" the bankruptcy case.  The Debtor rightfully argues that M&T is off-base to say that this is a two-party dispute that can simply be litigated in the state court foreclosure proceeding, because the Bankruptcy Code uniquely gives the Debtor the ability to bifurcate M&T's claim under §506 and then treat the unsecured portion under the proposed plan.  In the state foreclosure action, the M&T claim would be treated as a unitary block of debt to be satisfied by the Property serving as collateral.  The caselaw cited *supra* holds that it is not bad faith to propose to treat the secured portion of M&T's bifurcated claim (to the extent the Debtor is successful in the Adversary Proceeding) outside his proposed plan.  Moreover, while the proposed Second Amended Plan provides for a minimal payment to the Trustee and allowed general unsecured claims, it is not bad faith to take advantage of the tools provided by the Bankruptcy Code while making de minimis payments under a plan.

      **C.**      **Relief from Stay Will Not Be Granted at This Time**

      In the event the Court declined to dismiss the Debtor's bankruptcy case, the Motion to

Dismiss sought, in the alternative, relief from stay to proceed with foreclosure against the Property. M&T argued in the Motion to Dismiss that it was undersecured given its approximately $194,000 claim and the Debtor's valuation of the Property at $108,000. However, the Adversary Proceeding seeks to bifurcate and reduce M&T's claim to approximately $93,000. If successful, therefore, M&T would be oversecured. As discussed *supra,* and as the Debtor acknowledges, it is this bifurcation and reduction of M&T's secured claim on which the Debtor's proposed plan hinges. Relief from stay at this stage to permit M&T to proceed with foreclosure would simply allow M&T another way to obtain the relief it seeks by dismissal. The Court will therefore not grant M&T relief from stay at this point but will instead allow and expect the Adversary Proceeding to proceed expeditiously to arrive at a determination of the amount of M&T's secured claim. While the Adversary Proceeding continues, however, and given the time that has passed since the Motion to Dismiss was first filed, the Court will allow M&T, to the extent not already receiving adequate protection, to move for such relief. If the Court finds the Debtor is not or cannot provide adequate protection to M&T to the extent needed while the Adversary Proceeding moves forward to resolution, M&T's request for relief from the stay will be revisited.

### IV.    CONCLUSION

For the reasons discussed above, the Court will deny the Motion to Dismiss. An Order consistent with this Memorandum will be entered.

Dated: April 29, 2022

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Irwin L. Trauss, Esquire
Philadelphia Legal Services
718 Arch Street, Suite 300 N
Philadelphia, PA 19106

Rebecca A. Solarz, Esquire
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532

Kenneth E. West, Esquire
Chapter 13 Standing Trustee Office
1234 Market Street, Suite 1813
Philadelphia, PA 19107

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106